FILED
MAY 1 2 2011

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARK SAMS,

                    Petitioner,

          v.

JEFFREY THOMAS, Warden,
FCI Sheridan,

                    Respondent.

Civil No. 11-333-AC

FINDINGS AND RECOMMENDATION

ELLEN PITCHER
Assistant Federal Public Defender
101 SW Main Street
Suite 1700
Portland, OR 97204

          Attorneys for Petitioner

DWIGHT C. HOLTON
United States Attorney
District of Oregon
RONALD K. SILVER
Assistant United States Attorney
1000 SW Third Street
Suite 600
Portland, OR 97204

          Attorneys for Respondent

1 - FINDINGS AND RECOMMENDATION -

ACOSTA, Magistrate Judge.

Petitioner, an inmate in the custody of the federal Bureau of Prisons ("BOP") at FCI Sheridan, brings this habeas corpus action pursuant to 28 U.S.C. § 2241. For the reasons that follow, the Petition for Writ of Habeas Corpus should be GRANTED IN PART and DENIED IN PART. [1]

## BACKGROUND

On January 9, 2009, Petitioner was convicted in the United States District Court for the District of Montana on charges of access device fraud in violation of 18 U.S.C. § 1029(a)(2) and aggravated identity theft in violation of 18 U.S.C. § 1028(A)(a)(1). The trial judge sentenced Petitioner to 42 months of imprisonment. Petitioner has a current projected release date of August 21, 2011, via good conduct time.

Petitioner suffers from several medical issues, including Diabetes. Petitioner asserts that he suffers from Type I Diabetes, which he claims is "uncontrolled." According to Petitioner, his Diabetes can be adequately managed only in the community, where he may have access to an insulin pump. In support of his claim, Petitioner relies upon a January 18, 2011, statement made by Raymond Westermeyer, M.D., on a BOP Health Services "Medical Duty Status" form:

> I recommend this man be allowed to go to half-way house as soon as possible. Not until he gets to the outside will he have good diabetic control. Cannot manage closely on NPH and Regular insulin types, and will only be adequately controlled when he gets back on his insulin pump that was controlling his DM on the outside.

---

[1] Petitioner filed a letter to the Court in which he objects to assignment of this action to a Magistrate Judge based upon a claim that the assignment violates 28 U.S.C. § 636, and Petitioner requests re-assignment to a District Judge. Petitioner is incorrect. *See* Local Rule 72-1; 28 U.S.C. § 636(b). Accordingly, Petitioner's request for re-assignment (#10) is DENIED.

2 - FINDINGS AND RECOMMENDATION -

Pet. Exh. E.

Based upon Dr. Westermeyer's recommendation, Petitioner requested home detention release to Florida.   Respondent Thomas denied Petitioner's request. Pet. Exh. A.

In response to Petitioner's medical claims, Respondent provides a Declaration from Dr. James Pelton, the Western Regional Medical Director for the BOP.   Dr. Pelton reviewed Petitioner's medical records, and disagrees with Dr. Westermeyer's assessment that Petitioner cannot get his diabetes under control without transfer to the community for an insulin pump.

Dr. Pelton states Petitioner is a Type II Diabetic, whose condition needs to managed with insulin, diet, and exercise.  According to Dr. Pelton, Petitioner is scheduled to receive insulin twice a day.  Since January 2011, however, Petitioner has not reported to the morning pill line to receive insulin -- he has reported only once a day at the evening pill line.   Moreover, Petitioner is overweight and Dr. Pelton provides evidence he is not properly managing his diet.  Moreover, Petitioner's laboratory test results reflect acceptable blood sugar levels indicating his diabetes is controlled.

Finally, BOP guidelines provide that newly committed inmates who are on an insulin pump at the time of their commitment should  generally be maintained on a pump.  According to Dr. Pelton, when Petitioner was committed to the custody of BOP as a sentenced prisoner in April 2008, he did not have an insulin pump.

On March 17, 2011, Petitioner filed his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 in this Court.  Petitioner challenges the BOP's refusal to transfer him to community corrections in the form of home release, which he alleges is required to obtain medically necessary

care for his Diabetes.

In response to the Petition, Respondent also presents the Declaration of Margaret Kullunki, Case Management Coordinator for the BOP at FCI Sheridan. Ms. Kullunki states that pursuant to BOP Program Statement 7310.04, *Community Corrections Center (CCC) Utilization and Transfer Procedure*, Petitioner is categorically ineligible for consideration of transfer to community corrections because he has outstanding warrants.

Respondent argues Petitioner has no right to be immediately considered for transfer to an RRC due to his medical condition. Moreover, to the extent Petitioner contends the BOP improperly denied his request for a transfer to an RRC, Respondent argues this Court lacks jurisdiction to consider Petitioner's claim. Finally, Respondent argues Petitioner has not exhausted his available administrative remedies.[2]

## DISCUSSION

### I.    Exhaustion of Administrative Remedies

Section 2241 does not specifically require petitioners to exhaust their administrative remedies prior to filing a habeas corpus action. 28 U.S.C. § 2241; *Martinez v. Roberts*, 804 F.2d 570, 571 (9th Cir. 1986). As a prudential matter, however, a court may require a federal prisoner

---

[2]Petitioner moved for expedited treatment. On March 30, 2011, this Court issued an Expedited Scheduling Order. The Petition is now fully briefed and properly before the Court for disposition. The Court notes that counsel for Petitioner filed a "Motion for Interim Relief in the Form of Transfer to Community Corrections As Soon As Practicable" (#20) by which Petitioner seeks preliminary injunctive relief requiring the BOP to transfer Petitioner to community corrections pending the outcome of this action. Because the motion seeks preliminary injunctive relief, the Court has referred the motion to a District Judge for consideration. *See* 28 U.S.C. § 636(b)(1)(A) (absent consent, magistrate judge may not be designated to hear pretrial motion for injunctive relief).

to exhaust his administrative remedies prior to seeking review under § 2241. *Laing v. Ashcroft*, 370 F.3d 994, 997 (9th Cir. 2004). A court may waive the prudential exhaustion requirement where administrative remedies are inadequate or ineffective, futile, or pursuit of them would cause irreparable injury. *Id.* at 1000-01.

Petitioner argues exhaustion of administrative remedies would be futile in light of his approaching good conduct release date. While the Court has some concern that Petitioner did not diligently pursue his administrative remedies, it does appear that requiring exhaustion at this juncture would be futile. Accordingly, exhaustion is excused in the circumstances of this case.

## II.    Denial of Medical Care

Petitioner alleges BOP officials violated his Eighth Amendment right to be free from cruel and unusual punishment when they refused to provide him medically necessary care for his Diabetes in the form of a transfer to home confinement. An Eighth Amendment claim must satisfy both an objective and subjective inquiry. *Lopez v. Smith*, 203 F.3d 1122, 1132-33 (9th Cir. 2000). In the context of a claim for failure to provide medical care, a prisoner must establish a "serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The subjective inquiry requires a showing that corrections officers acted with deliberate indifference to this serious medical need. *Lopez*, 203 F.3d at 1131. A difference of opinion as to the specific course of treatment does not establish deliberate indifference. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

Here, Respondent submits the declaration of a qualified physician who reviewed Petitioner's complete medical records. Dr. Pelton concluded Petitioner did not have an insulin pump at the time of his commitment into BOP custody, and that Petitioner's Type II Diabetes was under adequate

medical control despite Petitioner's failure to comply with his treatment plan.

By contrast, Petitioner presents an isolated statement by one physician expressing an opinion that Petitioner cannot control his condition absent a release into the community. Other than this statement, Petitioner provides only conclusory assertions as to his alleged medical status as suffering from Type I Diabetes and the need for an insulin pump. Moreover, Petitioner provides no evidence that, if an insulin pump is necessary, it could not be provided in BOP custody. Indeed, as Dr. Pelton states, BOP clinical guidelines specify that newly committed inmates who are on in insulin pump at the time of commitment should generally be maintained on a pump.

Petitioner has not established that BOP officials are or were deliberately indifferent to a serious medical need. Accordingly, to the extent his § 2241 habeas Petition is based upon an alleged violation of his Eight Amendment right to be free from cruel and unusual punishment, the Petition is without merit.

## III.    Consideration for RRC Release

The United States Constitution does not confer any right upon an inmate to a particular custody or security classification. *Moody v. Daggett*, 429 U.S. 78, 88 (1976). Thus, inmates do not have a liberty interest in retaining or receiving any particular security or custody status "[a]s long as the [challenged] conditions or degree of confinement is within the sentence imposed . . . and is not violative of the Constitution. *Id*. Similarly, the mere fact of a prison transfer, standing alone, does not constitute cruel and unusual punishment in violation of the Eighth Amendment. *Hassain v. Johnson*, 790 F.2d 1420 (9th Cir. 1986). Thus, even inmate transfers to facilities far from their homes do not rise to the level of cruel and unusual punishment. *See, e.g., Gov't of Virgin*

6 - FINDINGS AND RECOMMENDATION -

*Island v. Gereau*, 592 F.3d 192 (3rd Cir. 1979).

In short, well-settled law establishes that prisoners have no inherent constitutional right to placement in any particular prison, such as a Residential Re-entry Center, to any security classification, or to any particular housing assignment. *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Meachum v. Fano*, 427 U.S. 215, 225 (1976). As such, Petitioner's sole avenue for substantive relief lies in statutory authorization.

In April 2008, the Second Chance Act of 2007, Pub. L. No. 110-199, went into effect. The Act authorizes the BOP to place certain inmates in Residential Re-entry Centers (RRC) for as much as one year at the end of their prison terms to aid them in their readjustment into society following incarceration. *See* 18 U.S.C. § 3624(c)(1).[3]  Placement designations under § 3624(c) require consideration of five statutory factors:

---

[3]18 U.S.C. § 3624(c) provides in pertinent part as follows:

(c) Prerelease custody.

(1) In General. The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community.  Such conditions may include a community correctional facility.

(2) Home confinement authority.  The authority under this subsection may be used to placed a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months.

* * *

(4) No limitations.  Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621.

(1) the resources of the facility contemplated;

(2) the nature and circumstances of the offense;

(3) the history and characteristics of the prisoner;

(4) any statement by the court that imposed the sentence

    (A) concerning the purpose for which the sentence to imprisonment was determined to be warranted; or

    (B) recommending a type of penal or correctional facility as appropriate; and

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b).

    The Second Chance Act does not create an absolute, enforceable legal right to a 12-month RRC placement for any prisoner.    Rather, what is required of the Act is a showing that the BOP actually engaged in an individualized determination of each inmate's appropriateness for RRC placement, using the statutory factors set forth in § 3621(c). *See Ramos v. Holt*, 2010 WL 2471707, * 9 (M.D. Pa. 2010); *Smith v. Sanders*, 2009 WL 2900317, *6 (C.D. Cal. 2009).[4]

    Following enactment of the Second Chance Act, the BOP has adopted a series of practices and procedures which govern inmate placement and custody. In a June 24, 2010, Memorandum, the BOP provides guidance to BOP staff when making inmates' pre-release RRC placement decisions. Pet. Exh. F. The June 24, 2010, memorandum specifically directs BOP staff to

---

    [4]Indeed, if the BOP denies transfer after undertaking the individualized determination required under the Second Chance Act, this Court lacks jurisdiction to hear a claim that the denial is arbitrary and capricious under 5 U.S.C. § 706(2)(A). *Reeb v. Thomas*, 636 F.3d 1224, 1227 (9th Cir. 2011).

understand that all inmates are statutorily eligible for up to 12 months pre-release RRC placement, though not all inmates are appropriate for placement. The Memorandum also directs that all inmates must be individually assessed for appropriateness using the five factors set forth in § 3621(b).

Here, it appears from the record the BOP is denying Petitioner placement in an RRC pursuant to § 3624(c) without undertaking the required individual assessment. According to the Declaration of Margaret Kullunki, Petitioner is categorically excluded from consideration for RRC placement because of outstanding warrants. This apparent categorical exclusion is premised upon a 1998 BOP Program Statement which provides:

> Inmates in the following categories shall not ordinarily participate in CCC programs:
>
> * * *
>
> f. Inmates with unresolved pending charges, or detainers, which will likely lead to arrest, conviction, or confinement.

Decl. of Margaret Kullunki, Att. 6, pp. 10-11.

The 1998 Program Statement preceded the Second Chance Act. To the extent the Program Statement is relied upon to categorically exclude Petitioner from eligibility for RRC placement consideration, the Program Statement conflicts with the superseding statute. Moreover, Respondent does not provide, and this Court could not locate, any other BOP rule, Program Statement, or guideline justifying categorical exclusion from individualized consideration for RRC placement based upon outstanding warrants. Accordingly, to the extent the Petitioner seeks an individualized assessment of his suitability for earlier residential release, the Petition should be conditionally

9 - FINDINGS AND RECOMMENDATION -

granted. Respondent should be given seven (7) days to undertake an individualized determination of Petitioner's suitability for early residential release.

## RECOMMENDATION

For these reasons, the Petition for Writ of Habeas Corpus should be GRANTED IN PART and DENIED IN PART. To the extent the Petition alleges BOP officials are deliberately indifferent to Petitioner's serious medical need in violation of his Eighth Amendment right to be free from cruel and unusual punishment, the Petition should be DENIED.

To the extent the Petitioner seeks an individualized assessment of his suitability for earlier residential release, the Petition should be conditionally GRANTED. Respondent should be ordered to conduct within a reasonable time, but not to exceed seven (7) days, an individualized assessment of Petitioner's suitability for early residential release.

## SCHEDULING ORDER

The above Findings and Recommendation are referred to a United States District Judge for review. Objections, if any, are due May 25, 2011. If no objections are filed, review of the Findings and Recommendation will go under advisement that date.

A party may respond to another party's objections within 14 days after the objections are filed. If objections are filed, review of the Findings and Recommendation will go under advisement upon receipt of the response, or on the latest date for filing a response.

DATED this 2th day of May, 2011.

John V. Acosta
United States Magistrate Judge

10 - FINDINGS AND RECOMMENDATION -          F:\Share\Acosta\11-333sams0512f&r.wpd